In re MILLS et al.

(Circuit Court, S. D. New York. June 27, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—"COTTON HEMSTITCHED LAWNS."
    Cotton hemstitched lawns, imported in pieces of from 28 to 30 yards in length, and 45 inches in width, having a broad hem about 5 inches wide turned over and sewed down on one side of the fabric, the body of the goods being a homogeneous cotton cloth, containing from 150 to 200 threads to the square inch, counting warp and filling, but open-work patterns or figures made by drawing out threads appearing continuously upon certain parts of the goods, the merchandise being chiefly used for women's and girls' dresses, skirts, and aprons, the broad hem constituting

a part of such garments when made up, but the material being also sold for sash curtains, *held*, that these lawns were properly dutiable as manufactures of cotton at 40 per cent. ad valorem, under Schedule I, par. 355, Tariff Act Oct. 1, 1890, as claimed by the importers, and not as "partly-made cotton wearing apparel," at 50 per cent. ad valorem, under paragraph 349 of the same schedule and act, as classified by the collector of the port of New York.

## At Law.

Appeal by the importers and the United States from a decision of the board of United States general appraisers.

Merchandise: Cotton hemstitched lawns. Classified by the collector as "partly-made cotton wearing apparel, 50 per cent. ad valorem," under paragraph 349, Tariff Act Oct. 1, 1890.

Importers' protest: "Manufactures of cotton not specially provided for, 40 per cent. ad val.," under paragraph 355 of same act; or as "cotton cloths, under paragraphs of Schedule I, according to number of threads and value."

The board of general appraisers found as conclusion of law that the merchandise was dutiable as countable cotton cloths, under Schedule I, par. 347, and sustained the protest on that head. Evidence was taken by both sides in the circuit court. It appeared that the goods came in pieces of from 28 to 30 yards in length, by about 45 inches wide, with a broad hem on one side; that their chief use was to be made up into women's and girls' dresses, skirts, and aprons, though the material was also sold for sash curtains. A government examiner testified that the count of threads in the fabric to the square inch was not uniform, as threads had been drawn out of certain parts to produce the open-work patterns.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for the government.

Curie, Smith & Mackie, (D. Ives Mackie, of counsel,) for the importers.

LACOMBE, Circuit Judge. In view of the presence of the hem, the article may be said to be partly made up; that is, there has been some manufacturing done to it since it left the loom. The evidence shows that it is adaptable, and is sometimes used for curtains, as well as for making articles of wearing apparel. With regard to the use of the phrase "made up wholly or in part,"— that is, as to these partly made up articles,—I think the true criterion when it is applied to wearing apparel is this: That it must at least be made up sufficiently far to enable us to identify the particular article of wearing apparel that is going to be made out of it. We cannot tell from this article whether it is a partly made up skirt or apron, or some other gown; and, until the process of partly making has progressed far enough along to enable us to say what particular piece of wearing apparel it is, I do not see how we can call it wearing apparel partly made up, especially as it is still susceptible of use for making curtains.

As to the other point, under the Robertson Case, (Robertson v. Hedden, 40 Fed. Rep. 322,) the ruling in which case I shall adhere to, there is but one conclusion to reach,—the article is not homogeneous. The material of which it is composed does not give the same results when counted in different places. For that reason I shall reverse the decision of the board of appraisers, and direct its classification under paragraph 355.