UNITED STATES *v.* CURLEY-BATES Co. (No. 4941) [1]

---

[1] C.A.D. 688.

United States Court of Customs and Patent Appeals, November 5, 1958

*George Cochran Doub*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.
*Lawrence & Tuttle* for appellee.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Associate Judges [original argument before JOHNSON, Chief Judge, and WORLEY, and RICH, Associate Judges]

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1916, one judge dissenting, sustaining the importer's protest and holding the instant importations dutiable at 10 per centum ad valorem under paragraph 412 of the Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as tennis racket frames in chief value of wood, rather than at 22½ per centum ad valorem under paragraph 409 of the Act, as similarly modified, as tennis racket frames, wholly or partly manufactured of willow, as assessed by the collector.

The pertinent provisions of paragraph 409, as enacted, read:

* * * Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind, 60 per centum ad valorem; * * *
* * * all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, 45 per centum ad valorem.

To that paragraph GATT added the following:

Tennis-racket frames, valued at $1.75 or more each, wholly or partly manufactured of rattan, bamboo, osier or willow_____ 22½ per cent ad val.

The pertinent provision of paragraph 412, as enacted, reads:

* * * manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

To that paragraph GATT also added the following language:

Badminton-racket frames and tennis-racket frames:
 * * * * * * *
 Valued at $1.75 or more each_____ 10% ad val.

It is agreed that the merchandise consists of tennis-racket frames valued at $1.75 or more each, and that portions of the frames are made of willow. As found by the Customs Court, the exhibits show that

the portions in question were not made from willow shoots or twigs, but were sawed from solid willow wood.

The sole issue here, as below, is whether the term "osier or willow," as used in paragraph 409 as modified, embraces solid willow wood such as that at bar, or is limited to willow shoots or twigs. If the latter interpretation is correct, the judgment should be affirmed; otherwise it should be reversed.

In the Government's brief the following definitions of "willow" and "osier" are quoted:.

Webster's New International Dictionary:

> Willow—1. Any tree or shrub of the genus Salix.
> 2. The wood of the willow; hence, colloq. something made of that wood as a cricket or baseball bat.

> Osier—1. Any of the various willows whose pliable twigs are used for furniture, basketry etc. * * *

Funk & Wagnalls Standard Dictionary:

> Willow—1. Any tree or shrub of the genus Salix. (Colloq.) Something made of willow, especially a baseball or cricket bat; * * *

> Osier—1. Any one of various species of willow, producing long flexible shoots used in wickerwork. * * *

From those definitions it appears that osier is willow in the form of pliable twigs and shoots, but not an additional and distinct kind of wood. Since osier is included within the term willow, it would appear to have been unnecessary for Congress to refer to osier at all if, as argued by the Government, "willow," as used in paragraph 409, was ▉ intended to include *all forms* of willow wood. It seems logical to assume, therefore, that Congress intended the words "osier" or "willow" to be used interchangeably, and that "willow" in this context means the twigs or flexible shoots. We think that view finds ample support in *F. L. Slazenger* v. *United States*, 22 Treas. Dec. 1080, T. D. 32641. There it was held that the term "osier or willow" in paragraph 212 of the tariff act of 1909 embraced only the lighter or twig forms of willow and did not include solid wood cut from the trunk. In so holding, it was said:

> * * * It is very evident that the terms "osier" and "willow" are used interchangeably and that the provision for "manufactures of osier or willow" was designed only to include articles made of these lighter forms of willow, while it is a matter of common knowledge, we think, that all willow furniture is made from osier willow. * * *

▉ That decision appears to be the only one in which the term "osier or willow" has been interpreted. Since that decision the term has been included in three successive tariff acts without any indication of an intention to give it a meaning different from that given it by the General Appraisers. While, as urged by the Government, the exact language of the 1930 Act differs from that of 1909, we agree

with the majority below that it is essentially the same so far as the instant issue is concerned. Accordingly, the fact that Congress has not seen fit to modify the term "osier or willow" indicates approval of the *Slazenger* decision. *United States* v. *Ascher & Co.*, 11 Ct. Cust. Appls. 453, T. D. 39532.

 The fact that the General Agreement on Tariffs and Trade modified paragraph 409 by adding a provision making express reference to tennis-racket frames of osier or willow is not controlling here since such an agreement does not change the *classification* of articles, but merely modifies duties as to merchandise already comprehended by the designated paragraph. *United States* v. *Canadian National Railways*, 29 CCPA 272, 278, C. A. D. 202.

We agree with the Customs Court that the word "willow," as used in paragraph 409 of the 1930 Tariff Act, does not include solid pieces of willow such as those at bar. The judgment is affirmed.